IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge R. Brooke Jackson

Civil Action No. 1:20-cv-02508-RBJ

MOOSE AGRICULTURAL, LLC and
COLORADO HEMP SOLUTIONS, LLC,

    Plaintiffs,

v.

LAYN USA, INC. and
HEMPRISE, LLC,

    Defendants.

---

ORDER ON PENDING MOTIONS

---

This matter is before the Court on several motions in limine and one motion to move the trial to Grand Junction.

## I.    BACKGROUND

The Court described the background of the case in some detail in its recent order denying defendants' motion for summary judgment. ECF No. 73. Very briefly, for present purposes, this is a contract dispute between the supplier and purchaser of hemp biomass products. The supplier claims that the product was delivered but not paid for. The buyer claims that product was defective and seeks a refund of the partial payment made. The case set for trial on March 7, 2022, and a trial preparation conference on February 3, 2022. Defendants recently filed several motions in limine, only some of which have responses to date. Plaintiff has even more recently made a pitch to move the trial.

1

**PENDING MOTIONS**

The Court addresses the motions in the order of their filing. Please bear in mind that an in limine ruling is always subject to reconsideration and change in the context of the actual evidence and arguments presented at trial. These rulings are intended to give the parties some degree of advance guidance to assist in their evaluation of their case and their preparation for trial.

1. **Defendants' Motion to Bar Testimony/Evidence of its Foreign Corporate Affiliates, ECF No. 76.**

Defendant Hemprise is a subsidiary of a Chinese company. It fears that if this is known to the jury it would be "highly prejudicial, potentially inflammatory, and incurable by instruction, because the jury might decide the case based on racial, ethnic, or national prejudice or stereotype. ECF No. 76 at 2. Plaintiffs respond they won't make disparaging comments about the parent company or China, but a ban on all references to China is overbroad. For example, they point out that one former employee of Hemprise who will testify by deposition got his Ph.D. from a university in China.

Defendants apparently have a much lower regard for jurors that I do. I have no reason whatsoever to surmise that jurors in this contract dispute will disregard the evidence and decide the case because of some prejudice against China or Chinese people. In addition, plaintiffs have provided a good example of one instance where a reference to China is reasonable and necessary. I do not want or expect plaintiffs gratuitously to make references to China that are not relevant or are cumulative, and I will apply Rule 402 or Rule 403 as appropriate if that were to happen. The motion is denied.

2.  **Defendants' Motion to Bar Testimony/Evidence re Degradation of Hemp, ECF No. 77.**

3.  **Defendants' Motion to Exclude Certain Opinions and Testimony of Dr. Chad A. Kinney, Ph.D., ECF No. 83.**

Defendants state there is no evidence of the degradation of the subject hemp. Relatedly, though somewhat inconsistently, they ask the Court to preclude Chad A. Kinney, Ph.D., from expressing the opinion set forth in his report that the subject hemp degraded over time. The short answer is that Dr. Kinney's testimony, like that of any expert witness, will be governed by Rule 702 of the Federal Rules of Evidence. If his opinions are relevant and reliable within the meaning of Rule 702, they will be admissible. If the Court finds that his opinion about the degradation of the hemp is not relevant and reliable, the testimony will not be admitted.

A party raising a Rule 702 motion is entitled to a hearing, indeed an evidentiary hearing if desired, before the testimony may be heard by the jury. Counsel can inform the Court at the trial preparation conference whether they want a hearing or want the Court to resolve the issue on the papers. Depending upon their answer, we will set a hearing before trial, or I will review the report and briefs and decide the issue before trial.

**4 and 5**. Defendants' motions in limine to bar testimony/evidence regarding witnesses who are not present or are unavailable or do not testify, ECF No. 78, and to bar testimony/evidence regarding defendants' net worth, revenue, or size, ECF No. 79, are said to be unopposed. Therefore, they are granted.

**6. Defendants' Motion to Bar Testimony/Evidence Regarding Colorado Hemp Laws, ECF No. 80.**

Defendants say that evidence concerning Colorado law (which the parties dispute) is irrelevant, because the Court had determined that Delaware law applies. Plaintiffs respond that because the hemp was grown and harvested in Colorado, it must comply with Colorado's hemp laws and regulations. I agree that if there are statutory or regulatory laws in Colorado that apply to hemp grown and harvested in Colorado, then this hemp must comply with them. Delaware law governs the legal relationship between the parties. Moreover, if, as plaintiff states, Delaware did not regulate industrial hemp when the parties entered into their contract, that is another reason that it makes no sense to insist that the choice of Delaware law not apply to the growing and harvesting of the product. The Court applies the parties' chosen law "unless there is no reasonable basis for their choice or unless applying the law of the state so chosen would be contrary to the fundamental policy of a state whose law would otherwise govern." *Brown v. Fryer*, No. 12-CV-01740-CMA-KMT, 2013 WL 1191405, at *2 (D. Colo. Mar. 22, 2013) (citing Restatement (Second) of Conflict of Laws § 187 (Am. Law Inst. 1971)).

**7. Defendants' Motion to Bar Testimony/Evidence regarding So-Called "Measures of Uncertainty," ECF No. 81.**

Defendants argue that "measures of uncertainty" applied by individual laboratories should not be given any effect in determining whether the product complied with the contract's specifications. Plaintiffs respond that their expert Dr. Kinney's opinions regarding laboratories' measurements of uncertainty applied to the subject hemp are relevant to the accuracy of the

hemp's tested THC levels and to show that the hemp is compliant with the specifications when the measures of uncertainty are applied.

Dr. Kinney's opinions on this subject are subject to the same Rule 702 standards, and to a hearing if requested by the defendants, as his other opinions. However, recognition of the possibility of testing error is not surprising or unusual. As an example, plaintiffs point to the U.S. Department of Agriculture regulations implementing the 2018 Farm Bill. At 7 C.F.R. 990.1, defining "acceptable hemp THC level," the regulation requires that a laboratory testing a sample

> must report the total delta-9 tetrahydrocannabinol content concentration level on a dry weight basis and the measurement of uncertainty. The acceptable hemp THC level for the purpose of compliance with the requirements of State or Tribal hemp plans or the USDA hemp plan is when the application of the measurement of uncertainty to the reported total delta-9 tetrahydrocannabinol content concentration level on a dry weight basis produces a distribution or range that includes 0.3 percent or less.

Recognition of the possibility of testing error, as a general concept, is likely a practical necessity in any scientific context where absolute certainty is unattainable.

8. **Defendants' Motion to Bar Testimony/Evidence Purporting to Reflect the Unexpressed Intent, Understanding, or Beliefs Regarding the Parties' Contract or its Terms, ECF No. 82**.

Essentially, defendants argue that the contract speaks for itself, and the parties are bound by the terms to which they agreed. Plaintiffs respond that the motion is overly broad; that evidence of the parties' understandings, beliefs, and intent is relevant to explain their actions; and that the contract contains a number of ambiguous terms.

This is something I commented on in my comments on the parties' proposed jury instructions. In general, I agree with the defendants. The contracts govern the parties' respective rights and obligations, and evidence regarding what an individual thought it meant or intended it to mean generally would not be admissible.

To be sure, there are possible exceptions. If a material term is ambiguous, then evidence of the parties' intent could be admissible to help resolve the ambiguity. But interpretation of contracts is generally a matter for the Court. The Court, not jurors, would determine whether a term is ambiguous. If a term is ambiguous, jurors might be called upon to resolve a factual dispute regarding intent. Another possible exception could be the implied covenant of good faith and fair dealing. If, for example, the contract grants a party discretion, and the opposing party claims that the discretion has been exercised contrary to the party's reasonable expectations, evidence regarding the party's reasonable expectations could be admitted. That depends, of course, on what the elements of the implied covenant are under Delaware law.

I do not know at this point what terms either party regards as ambiguous, or what evidence regarding intent would be offered to assist in resolving the ambiguity, or even what the parties consider to be the roles of the Court and the finder of fact on those issues.[1] I am not prepared to resolve those issues in limine.

---

[1] Plaintiffs assert that "a number of the provisions in the Agreement are ambiguous." ECF No. 89 at 4-5. As examples, they list "industry standards." *Id.* at 5. However, the term isn't ambiguous. What the applicable industry standards are may well be a disputed matter as to which evidence would be admissible. As another example plaintiff lists "THC less than 0.3% by 2019 Farm Bill definition." That language is not ambiguous. Perhaps there could be a dispute about what the definition is, although the regulation I discussed above that incorporates measures of uncertainty seems to me to be a pretty clear definition.

**9. Plaintiffs' Motion to Transfer the Case to Grand Junction for Trial, ECF No. 90.**

On October 13, 2020 the Court set this case for trial in Denver beginning March 7, 2022. ECF No. 38.  However, in the Scheduling Order issued on September 28, 2020, the Court had addressed the possibility of changing the location to Grand Junction.  In providing the parties with a choice of potential trial dates, the Court added:

> **PLEASE NOTE, THESE ARE DATES FOR A TRIAL IN DENVER.  IF PLAINTIFFS DO REQUEST A TRIAL IN GRAND JUNCTION, AND IF IT APPEARS THAT THE LIKELY WITNESSES ARE SO SUBSTANTIALLY BASED THERE THAT THE TRIAL SHOULD TAKE PLACE THERE, THEN WE WILL HAVE TO OBTAIN NEW DATES.  I AM AWARE THAT PLAINTIFFS' COUNSEL ARE BASED IN GRAND JUNCTION, AND THAT DEFENDANTS ELECTED TO REMOVE THE CASE, AND I RESPECT PLAINTIFFS' CHOICE OF FORUM IN GENERAL.  ON THE OTHER HAND, MOVING THE COURT AND COURT STAFF TO GRAND JUNCTION INVOLVES CONSIDERABLE HASSLE AND EXPENSE.  IT IS NOT EVIDENT ON THE FACE OF THE PLEADINGS THAT THE ISSUES ABOUT THE TESTING, WHICH SEEM TO BE THE FOCUS OF THE CASE, ARE GEOGRAPHICALLY BASED.  PLEASE GIVE SOME THOUGHT TO THESE ISSUES BEFORE ANY MOTIONS ARE FILED.**

ECF No. 36 at 17.

To the best of my knowledge, this issue was never raised again until the plaintiffs filed the pending motion on January 31, 2022 to move the trial to Grand Junction.  ECF No. 91.  They ask the Court, pursuant to 28 U.S.C. 1404(a), to move the case for the convenience of parties and witnesses.  They note that they filed the case (on July 27, 2020) in state court in Mesa County (Grand Junction), but defendants removed it to federal court.  That is a point in their favor, as I acknowledge in the above-quoted excerpt from the Scheduling Order.

Regarding witnesses, they state that they plan to call two client representatives, both of whom reside in Grand Junction; that their expert, Dr. Kinney, lives in Pueblo but doesn't mind traveling to Grand Junction; that Dr. Li will likely be called by deposition; and that they might

call a representative of Kaycha Labs, which is located in Denver.  ECF No. 90 at 3-4.  They add that defendants have indicated their intent to call witnesses who are based in California, Michigan and Broomfield, Colorado.  Frankly, the location of witnesses is, at best, a mixed bag.

Plaintiffs acknowledge that the parties can receive a fair trial in both locations.  *Id.* at 5.  They suggest that there should be no concern about Grand Junction's "state of the art" federal court facilities.  *Id.* at 6.  Also, and I suspect a significant factor in their deciding to seek the change, their lawyers practice in Grand Junction.  That too is a mixed bag; defendants' lawyers, the Court, and Court staff all are Denver based.  Plaintiffs acknowledge that defendants oppose a transfer of the case to Grand Junction.

A significant issue, but one that plaintiff's do not address (and in part might not know) is the impact of the pandemic on the issue.  At the present time, the courthouse and court room in Grand Junction are not well suited for a jury trial.  The courtroom, in which I have tried jury trials in the past, is a delight.  But it is small, the occupants are crowded closely together, and trying a case at a time when positive COVID tests have been reported to have mushroomed in Grand Junction, is simply not desirable from the standpoint of the health and safety of prospective jurors, chosen jurors, witnesses, the parties, counsel, or court staff.  That surely will not continue to be the case indefinitely, but it is the case at this time.

The pandemic has had a least one positive impact, however, and that is that it has opened people's eyes to the possibility and practicality of remote testimony.  Thus, for the several out of state and out of town witnesses listed by the parties, if an individual has concerns about travel, or being in a small courtroom with numerous other people, testimony by video teleconference is an option that the Court will permit.

I will discuss this issue with counsel during the trial preparation conference, as well as this case's place in the priority listing for trials on March 7, 2022 in Denver. Suffice it to say, however, that there is no possibility of moving this case to Grand Junction for a March 7, 2022 jury trial. So, at this time, the motion is denied, without prejudice.

**ORDER**

1. ECF Nos. 78 and 79 are GRANTED.

2. ECF Nos. 76, 77, 80, 81, 82 and 90 are DENIED. I note, however, that as to ECF No. 77, there will have to be admissible testimony, which might depend on resolution of ECF No. 83. Also, whether and what evidence might be admitted with respect to the issues raised in ECF No. 82 depends on whether the Court finds that a material term is ambiguous and needs resolution of a fact issue by the jury to resolve.

3. The Court issues no ruling at this time as to ECF Nos. 83 and as to the admissibility of expert testimony by Dr. Kinney on topics mentioned in any of the motions, pending a decision by the parties as to whether they want a hearing, and if so, whether they want it to be an evidentiary hearing.

DATED this 3rd day of February, 2022.

BY THE COURT:

_____
R. Brooke Jackson
Senior United States District Judge