IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge R. Brooke Jackson

Civil Action No. 1:20-cv-02508-RBJ

MOOSE AGRICULTURAL, LLC and
COLORADO HEMP SOLUTIONS, LLC,

    Plaintiffs,

v.

LAYN USA, INC. and
HEMPRISE, LLC,

    Defendants.

---

ORDER ON MOTION TO EXCLUDE TESTIMONY OF CHAD A. KINNEY, PH.D

---

    Defendants move to exclude certain opinions of plaintiffs' retained expert, Dr. Chad A. Kinney. The Court has considered the parties' briefs and the evidence and arguments presented by counsel during hearings on the motion held on June 10 and July 1, 2022. For the reasons set forth herein, the motion is denied.

## I.    BACKGROUND

    This is a contract dispute. In May 2019 plaintiffs Moose Agricultural, LLC and Colorado Hemp Solutions, LLC agreed to supply defendant Layn USA with hemp biomass. To be considered legal hemp biomass and not illegal marijuana, the product must have no more than 0.3 percent THC. The contract between the parties provided that the biomass have "THC less than 0.3% by 2019 [sic] Farm Bill definition." ECF No. 49-2 at 10. The contract also specified a "Minimum 8% CBD" (Cannabidiol). *Id.*

1

Plaintiffs supplied defendants with a product they claim was legal hemp biomass that conformed to the contract specifications. Defendants rejected the product, claiming that it had too much THC to be considered hemp biomass, and that it also had less CBD than the contract required. There is no dispute that a number of the tests of the product exceeded 0.3% THC and fell below 8% CBD. The dispute with respect to THC content is whether the testing laboratories' "measures of uncertainty" in their respective test results can be considered; and if so, whether the product was compliant with the contract. The dispute concerning CBD is different. Plaintiff contends that the product would have been compliant if it had been accepted by the defendants in a timely manner, but that over time the CBD content naturally degrades which explains the test results in this case.

The anticipated testimony of Dr. Kinney addresses both issues. Before critiquing Dr. Kinney's opinions concerning measures of uncertainty, defendants contend that measures of uncertainty cannot be considered under the terms of the contract. Even if the contract permits levels of uncertainty to be considered, defendants note that Dr. Kinney agrees that the measures of uncertainty used by laboratories that tested the product were unreliable. With respect to the CBD issue, defendants contend that Dr. Kinney's degradation opinions are unreliable, at least in part because he did not test the actual product involved in this case.[1] Defendants also contend that Dr. Kinney cannot express what defendants regard as legal opinions.

---

[1] Defendants filed a separate motion in limine to bar evidence of degradation of the hemp. ECF No. 77. The Court denied the motion as part of its omnibus order addressing the motions in limine but indicated that "there will have to be admissible testimony, which might depend on resolution of ECF No. 83." ECF No. 92 at 9. I am addressing the degradation issue in the present order insofar as it pertains to Dr. Kinney's testimony.

2

## STANDARD OF REVIEW

Under Rule 702 of the Federal Rules of Evidence, a qualified expert may provide opinion testimony if his opinions are relevant and reliable. Expert opinions are relevant if they would "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591. They are reliable if, in addition to the expert being qualified, his opinions are "scientifically valid" and based on "reasoning or methodology [that] properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 593.

The proponent of expert testimony has the burden to show that the testimony is admissible. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009). The trial court plays a "gatekeeping" role that involves an assessment of the "reasoning and methodology underlying the expert's opinion" and a determination of "whether it is scientifically valid and applicable to a particular set of facts." *Goebel v. Denver and Rio Grande Western R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000). However, the trial court has discretion as to how to perform this gatekeeping function. *Id.* It is not a role that emphasizes exclusion of expert testimony. *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1082 (D. Colo. 2006).

## ANALYSIS AND CONCLUSIONS

A. **Dr. Kinney**.

Plaintiffs' expert, Dr. Kinney, is a Professor of Chemistry at Colorado State University-Pueblo. He specializes in environmental and analytical chemistry. He is also the Director of the Institute of Cannabis Research at the university. He has authored or co-authored publications concerning hemp biomass and extraction of cannabidiol from bulk industrial hemp. *See* ECF

No. 87-1 (his CV).  He expressed certain opinions in his initial report, ECF No. 70-3, and in a rebuttal report, ECF No. 70-4.  He further explained his opinions in his testimony during both sessions of the hearing on the pending motion.

Defendants do not question Dr. Kinney's qualifications to express opinions on hemp biomass generally or on issues concerning THC and CBD content in particular.  However, they object to certain of his opinions in this case, to which I will turn next.

### B.  Measures of Uncertainty.

When a lab determines the levels of THC and CBD in a sample of product, it also discloses, or should disclose, its results within a corresponding range of uncertainty.  For example, a hypothetical lab's measurement of uncertainty could be plus or minus 0.06.  If a contract specifies THC less than 0.3%, and a sample tests at 0.35% THC, it would still be compliant if the measure of uncertainty is considered because the THC could be as low as 0.29% or as high as 0.41%.

### C.  Opinions Concerning the THC Issue.

The parties dispute whether measures of uncertainty can be considered in this case. Plaintiffs' position is that consideration of measures of uncertainty is standard in the industry and has been recognized as such in regulations issued by the USDA pursuant to the 2018 Farm Bill. 7 C.F.R. § 990.1 ("The acceptable hemp THC level for the purpose of compliance with the requirements of State, Tribal, or USDA hemp plans is when the application of the measurement of uncertainty to the reported [THC] content concentration level on a dry weight basis produces a distribution or range that includes 0.3% or less.").  If the measures of uncertainty of the various

labs that tested the samples are considered, then the samples arguably complied with the contract.

Defendants' position is that neither the contract nor the Farm Bill mentions measures of uncertainly, and that the agency's regulations which were enacted after the parties entered into their contract are not retroactive. *See De Niz Robles v. Lynch,* 803 F.3d 1165, 1172 (10th Cir. 2015) ("[A] statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms."). Plaintiffs counter that application of measures of uncertainty was the industry standard when the parties entered into the contract. Their evidence is (1) the anticipated testimony of the individual who negotiated the contract on behalf of the plaintiffs; (2) the opinion of Dr. Kinney; and (3) the regulations, which, even if not binding, provide some evidence of the industry standard at the time. Moreover, the contract provides, "[a]dditionally, at any time during the term of this agreement, Supplier shall make samples of crop or harvested Product available to Layn for testing, at Layn's sole expense to ensure compliance of the Product with the specifications herein, all laws and regulations, Supplier's warranties, *and industry standards.*" ECF No 49-2 at ¶2(h) (emphasis added).

To the extent that this dispute presents an issue of law, it is an untimely dispositive motion. In any event, I am inclined to conclude that if application of testing measures of uncertainty was a well-known industry standard, it applies to this contract. Whether the tests in question fell within the corresponding labs' measures of uncertainty is a disputed issue of fact.

That leads to a second opinion of Dr. Kinney. Although Dr. Kinney's rebuttal report criticizes defendants' expert for failing to consider measures of uncertainty, it also notes Dr.

Kinney's skepticism about the accuracy of the uncertainty measures reported by the testing labs. *See* ECF No. 70-4 at 1, 10. In his testimony during the Rule 702 hearing Dr. Kinney expressed his opinion that the measures of uncertainty reported by most, if not all, of the involved labs were improperly determined, and therefore, that they are not reliable.

Based on that opinion, defendants argue that the evidence of the labs' measures of uncertainty should be excluded as unreliable. However, that argument misses the point of Rule 702, which is whether the opinion of the expert is irrelevant or unreliable. Here, defendants accept and adopt Dr. Kinney's opinion. In any event, his opinion is, after all, just an opinion. Presumably, the labs that adopted their various measures of uncertainty believe that they were properly determined. That will be an issue for the jury to resolve. It is not the basis to exclude Dr. Kinney's testimony concerning the THC issue.

**D.  Opinions Concerning the CBD Issue.**

Plaintiffs argue that defendants unreasonably delayed in accepting delivery of the hemp biomass during the October to December 2019 timeframe and into 2020. Defendants dispute that. Dr. Kinney's opinions are that hemp biomass degrades over time, that the degradation rate depends on storage conditions and other variables, and that degradation can be seen in the test results taken over a period of months. Defendants argue that his opinions in this area are unreliable because he did not test the actual hemp in question. Moreover, according to defendants' expert, the test results indicated that the CBD levels increased, then decreased, then increased twice more.

Whether defendants unreasonably delayed taking delivery of the hemp is a disputed factual issue. Whether degradation of the hemp is responsible for the CBD tests is a disputed

fact issue. Whether Dr. Kinney's failure to test the actual hemp diminishes the reliability of his opinions is likewise a matter that goes to the weight, not the admissibility, of his opinion. He explains that by the time he was engaged in this case, the hemp would have degraded beyond the point that the testing would be meaningful. It is not uncommon for experts in other fields, such as medicine, to base opinions on their review of records and documents, like a patient's medical records, rather than hands-on tests. Whether that applies in the context here is a matter that defendants can challenge through cross-examination and the opinion of defendants' expert.

### E. Legal Opinions.

Defendants contend that Dr. Kinney provides impermissible legal conclusions about (1) the timeliness of defendants' rejecting the hemp; and (2) Colorado law's THC requirement. Plaintiffs respond that Dr. Kinney will not testify about the legal effect of defendants' actions, only about the impact of degradation on test results.

I agree that Colorado law is not applicable in this case. The contract specifies that Delaware law governs. During the hearing Dr. Kinney was asked a number of questions about Colorado law and the application of the law by the Colorado Department of Agriculture (such as a 0.09 % variance that the Department apparently applies to pre-harvest hemp). Unless defendants open the door to that subject, it should not be pursued at trial. Dr. Kinney will not, in any event, be permitted to express opinions on what the law is. This does not mean that he cannot express opinions on industry standards.

### ORDER

Defendants' motion to exclude the opinion testimony of Dr. Kinney, ECF No. 83, is DENIED.

DATED this 18th day of July, 2022.

BY THE COURT:

_____
R. Brooke Jackson
Senior United States District Judge

8